UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

RECEIVED

JUN - 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MICHAEL L. BROWN,            )

        Plaintiff,      )

        v.            )   CV Action No.080821ESH

U.S. DEPT OF JUSTICE et al,)

        Defendant,     )

MOTION TO AMEND, SUPPLEMENT, AND OR EXPAND THE RECORD

On or about April 17, 2008 plaintiff filed a short

hand written pro se "VAUGHN MOTION" (that due to the

instutional lock down couldn't be typed), in this court

petitioning for the release of all information pertaining to

the plaintiff Michael L. Brown especially the information on

the FBI "I-Drive", which was requested on the initial (FOIA)

request #1009246 filed in 2004 and denied on the initial

denial Appeal #05-1149. Filed along with the "Vaughn Motion"

is a In Forma Pauperis Motion in this court. On May 13, 2008

the court responded by filing an Order Granting the In Forma

Pauperis in this case to proceed forward. The courts also

directed plaintiff that all subsequent correspondence should

be directed to the case number and Judge Friedman assigned in

this case.

The defense has stated in the past that this "I-Drive"

information does not exist." " This Information would endanger

the safety of others." "The safety of the plaintiff who is

serving 73.5 years, a life sentence in a Maximum Security

prison "Innocent" and was "Wrongfully Convicted". Certainly

his safety is more an immediate issue. Plaintiff needs this

information to prove his innocence.

Petitioner first learned of withheld exculpatory evidence from correspondence with an attorney on September 8, 2004. (See Exhibit A.) He then had his concerns confirmed by FBI agents in a international radio broadcast on September 29, 2004. (See Exhibit B) Petitioner then requested, under the Freedom of Information Act (FOIA), a copy of all the documents pertaining to him including the "I-Drive system" maintained by the Federal Bureau of Investigation (FBI). Their initial response arrived on November 30, 2004 (See Exhibit C). His second query response, denied based upon individual safety factors, was dated December 7, 2004 (See Exhibit D). Upon being denied access to the files requested, Petitioner appealed the decision which was responded to on March 8, 2005 (See Exhibit E). In this response to his appeal he was assigned a case number due to the volume of request received. On June 13, 2006, Petitioner Brown requested status of Request and Appeal No. 05-1149 to date no avail. There is yet to be any further action taken in this matter. Petitioner sent no less that five (5) petitions and letters to request information contained in the "I-Drive system", and continues to wait for a response to his last letter sent, dated July 12, 2005, and June 12, 2006. Petitioner still seeks redress from the FBI by appealing the denial of his access to "I-Drive system" files; Files that pertain to Petitioner and his investigation. (See Exhibit F & G).

The defendants wrote plaintiff May 19, 2008, in responds to the  certified copy of the "VAUGHN MOTION" required to be sent to opposing counsel. In the correspondence

dated May 19, 2008, defendants stated:

"The FBI properly withheld this information in it's entirety because it is protected from disclosure under the FOIA pursuant to:

1.) 5 U.S.C. § 552(b)(2), which concerns matters that are related solely to internal agency practices.

2.) 5 U.S.C. § 552(b)(7)(c), which concerns records or information complied for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties:and

3.) 5 U.S.C. 552(b)(E), which concerns records or information complied for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigation or prosecutions." (See Exhibit H )

If the Federal Bureau of Investigation insists on being so apprehensive in releasing the requested information to the Petitioner, then the requested information should be ordered to be released to the Impartial Judge over this matter, who can evaluate the Evidence as to its Exculpatory Nature, or otherwise for the determination of this Motion.

Argument

Freedom of Information Act Fortified by Congress, Recently in early 2008 Congress has recently stated "No matter who is the next president, he will have to run a government that is more open than in the past". "Pactrick Leahy D-Vt. Judiciary Committee Chairman". Senate floor. (See Exhibit I )

Discovery is a pillar of the judicial process. Its correct use is vital to the administration of justice. There

3

can never be a point during the discovery process where
evidence, and evidence is withheld omitted, redacted, tampered
with or otherwise tainted. In the case at hand, Petitioners
ability to present a defense was severely hampered by a
violation of this principle.

Petitioners Constitutional Rights under the Fifth and
Sixth Amendments were violated, depriving him off a fair trial
by virtue of systemic discovery violations based upon FBI
policy, i.e. (See Exhibit D), and their procedure of failing
or refusing to disclose all relevant information to the United
States Attorney. This non-disclosure included information
material to Petitioners defense and in direct violation of
Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United
States, 405 U.S. 150 (1972). According to a letter sent dated
June 8, 2004, David M Hardy, Acting Deputy Assistant Director,
Records Management Division, Federal Bureau of Investigation,
"The I-Drive System"... used by field offices to hold
investigative documents so that supervisors can approve them
before putting them in the FBI'S official case files". In
other words, this evidence stays in limbo-on the "I-Drive" and
is being refused to Petitioner. Under Kyle v. Whitely, 514
U.S. 131 L.Ed 490, 115 S.CT. 1555 (1995), the prosecutor has
an affirmed duty to seek out exculpatory evidence, even if it
is being reversed for government misconduct, although the
prosecutor was also duped. The information contained in these
files would have been indispensable in the assertion at trial
of Petitioner that he was neither the lead co-conspirator, nor
a co-conspirator in any way, shape or form. These files would
the actual perpetrators and conspirators.

4

The "I-Drive System" files would show the prosecution used perjury in their witnesses, and proceeded with a trial that had tainted grand jury proceedings. Plaintiff learned of the withheld exculpatory information from correspondence with an attorney. Plaintiff also learned from an attorney & witnesses that evidence was given to the government that shows plaintiff's innocence. Plaintiff is requesting information he knows to be exculpatory. Plaintiff needs this information to prove his "Innocence". Plaintiffs "Wrongful Conviction" was based upon government witnesses, alleged co conspirators who were all given immunity, and leniency for these crimes they committed. Plaintiff was convicted of conspiracy to robbery, all the governments witnesses who gave questionable testimony, testified against plaintiff admitted they committed these crimes that were committed back in 1997-98, then stated plaintiff conspired with them in order to gain the best possible deal for their plea agreements. This was the only evidence, the testimony from the bought government witnesses. Witnesses with strong credibility issues.

Finally as if the aforementioned offenses were not enough, the "I-Drive files system" would show how the entire trial was selective and vindictive in nature.

When the FBI denies Petitioner request for disclosure under FOIA, ostensibly due to individual safety factors, or any reason they defy the Constitution. While individuals safety is an important and noble consideration when releasing information, never should one individuals safety trump and thereby violate another Petitioners constitutional Rights. We can not ignore our esteemed Constitution based on the

5

disrection of a public servant not versed in constitutional jurisprudence. These "I-Drive" system files contain information, which exists beyond a shadow of a doubt and was presented during discovery, petitioner was involuntarily forced to present an incomplete and inadequate defense.

Throughout Petitioners trial the government emphasized to the court and counsel that it was aware of its obligations under Brady and Giglio and that no such information was extant. Likewise, in this case, the government resisted defense subpoenas designed to learn the surpassed evidence.

Since the Petitioners "Wrongful Conviction", and his petitioning for this suppressed exculpatory evidence while he was in U.S.P. Florence, Colorado, Petitioner has suffered, ben harassed and locked in the S.H.U. (Special Housing Unit) without ever having any misconduct what so ever. His life has been threatened and he has been declared to have serious mental problems. Petitioner was transferred as far away from his family in the main land United States  U.S.P. Victorville, California, and now to USP Tucson where there's plenty of violence and lockdowns. All as a result of his erroneous conviction and seeking justice through this suppressed exculpatory evidence (See Exhibit(s)J 1&2). On November 14, 2006, Petitioners Rule 33 was denied and the judge commented in the order that it was pre-mature. Due to the fact that petitioner did not have the "I-Drive System Files" in his possession. (See Exhibit K ).

Petitioner now request an Order from this Honorable Court directing the U.S. Department of Justice's to produce all the information including the "I-Drive System Files"

6

regarding the criminal investigation and discovery pursuant

this case at bar.

At the very least:

Order defendants give a detailed justification for the

alllegations contained in defendants answers and previous

adminstrative denial that the requested documents are exempt

from disclosure under the freedom of information act, 5 U.S.C.

552, including an itemization and index of documents claimed

to be exempt, correlating specific statements in such

justification with actual portions of the requested documents.

See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir 1973) Cert Den 415

U.S. 977 (1974).

Conclusion

Grecco v. Dept of Justice, No. 97-0419, at 1 (D.D.C.

Sept. 22, 2006)(FBI ordered to conduct search of shared

computer drives in field office.

Plaintiff Michael L. Brown, move this court for an:

Order: U.S. Department of Justice, FBI, & Office of

Information and Privacy to provide any and all information

including the "I-Drive System Files" on petitioner within 30

days.

Order: Defendantd to turn over all information on the above

named plaintiff including the I-Drive, and on request No.

1009246 and Appeal No. 05-1149 to the plaintiff.

Respectfully Submitted,

On this ___1___ Day Of _JUNE_ 2008.

Michael L. Brown #04909-090

USP Tucson

Tucson, AZ 85734

7

Certificate of Service

I certify that the foregoing motion was mailed to the Clerks Office for the United States District Court, for the District of Columbia. Also served by the U.S. postal service first class mail prepaid postage is: U.S. Department of Justice, Office of Information and Privacy David Hardy and Priscilla Jones 935 Pennsylvania Ave NW Washington, DC 20535-0001.

On this  /  Day Of  June 2008.

Michael L. Brown #04909-090

USP Tucson

Tucson, AZ 85734

(Pro Se W/Legal Assistant)

A

# P R I C E & P R I C E

## ATTORNEYS AT LAW

GEORGE E. PRICE    THOMAS E. PRICE

September 8, 2004

RE:    Amend your Habeas Petition.

Dear B

A new case from Detroit, Michigan (actually a terrorist case) has revealed for the first time that as a standard operating norm FBI agents have discovery documents screened by their FBI supervisors and that materials are routinely screened from the government attorney so that both the defense attorney and the government attorney never even know what was held back from being disclosed. My recollection is that the convictions in those cases have now been overturned.

We filed voluminous and numerous discovery motions in your case. This practice by the FBI of failing to disclose was probably taking place in your case because it is a procedure that the FBI employs in apparently all cases. If so, and if the material you never received has any consequence, it could form a grounds to give you a new trial.

I would suggest that you include a claim in your petition that your "constitutional rights under the Fifth Amendment, and Sixth Amendment were violated depriving you of a fair trial by virtue of systematic discovery violations based upon the FBI policy and procedure of failing to disclose all relevant information to the United States Attorney and that the withheld information was material to your defense." You could include whatever else you might need to include such as ineffective assistance of counsel and government misconduct.

You probably do not have to reallege the entire petition and simply file a motion to amend your original Petition by moving to amend and add the supplemental claim to the original petition. In the body of that document, then you would simply make the motion and add the additional claim.

I will include with this letter what I might be able to find on the subject. I heard about this case on the radio and thought it might have a bearing on your case.

Sincerely,

Thomas E. Price

enclosures
copy:    file.
e:\tcpw\t2657flo.le2

317 COURT STREET NE, SUITE 203 · SALEM, OREGON 97301-3526 · (503) 363-7334 · FAX (503) 581-2260

Exhibit B

# The FBI's I-Drives – The Real 'X-Files'

By Jack King

Shortly before Oklahoma City bomber Timothy McVeigh was executed in 2001, the FBI revealed that it had recently discovered some 4,400 pages of witness interviews and other documents that should have been turned over to his defense attorneys before trial. Among the documents "found" years after the trial were FBI interview reports (FBI Form 302s) of witnesses who believed they had seen McVeigh with the infamous "John Doe Number 2," a short, stocky young man whose drawing was widely circulated before and after McVeigh's arrest on traffic and weapons charges, and other leads of possible interest to the defense but which the FBI had decided were dead ends.

Federal prosecutors insisted they had no idea that the documents existed. Prosecutors are legally required to turn over any material exculpatory evidence -- evidence tending to disprove a criminal defendant's guilt or mitigate his punishment -- to the defense upon request. Late "discovery" of mislaid exculpatory evidence is not uncommon.[1] The question is: How does the single-greatest record-keeping agency in the United States lose huge chunks of closely-related case-specific documents before they go into the official files?

One "place" where thousands of pages of documents may go "overlooked" is not a place at all. It's a shared "temporary storage" drive on FBI field office computer networks that the bureau calls the "I-drive." According to David M. Hardy, Acting Deputy Assistant Director of the FBI's Records Management Division, "The 'I-drive system' ... is used by field offices *to hold investigative documents so that supervisors can approve them before putting them in the FBI's official case files.*"[2] In other words, evidence that isn't "approved" by a supervisory agent does not go in the file. It stays in limbo – on the I-drive.

Federal prosecutor Mike Wald, of the South Florida Money Laundering Strike Force in Miami, told National Public Radio, "If things do not go into that file, there's a good reason for it. It's not because it's being hidden. *It's because either it is an inappropriate document that shouldn't have been prepared or, in some way, is too sensitive to go into a straight report....* In a large investigation, [FBI agents] would make hundreds and even thousands of decisions on what information that is coming into that field division would be of value, things to pursue, things to drop and which direction to go that would be a continuing process." [3]

The trouble with that reasoning is, under *Brady v. Maryland*[4] and its progeny, prosecutors are not supposed to decide what is, or is not, material and exculpatory – if in doubt, that decision must be made by the judge.

The I-drive is found only on the field office computer networks.[5] According to FBI officials, headquarters in Washington does not maintain an I-drive nor does it have any access to the field offices' I-drives.[6] Nor do prosecutors have access to the drives. When a prosecutor searches the official case file for exculpatory evidence in response to a specific or general *Brady* demand, he is limited to only the evidence the FBI has placed in it. But under a 1995 U.S. Supreme Court case, *Kyles v. Whitley*[7], the prosecutor has an affirmative duty to seek out exculpatory evidence, even if it is being concealed by law enforcement, and a conviction may be reversed for government misconduct although the prosecutor was also duped.

American University law professor Michael Tigar, who represented Terry Nichols in the federal Oklahoma City bombing case in 1996, explained how the FBI frustrated the prosecution and the defense in that case on National Public Radio's "All Things Considered" in September 2004.[8] "[T] he worst problem was that the prosecutors we faced were not being told the truth by the FBI about what they had. They, in good faith, negotiated with us a deal that required them to produce relevant FBI materials. They broke that deal. They broke it because the FBI decided to withhold things from the lawyers, the government lawyers that were trying the case. The bureau's out of control."

Exhibit B-1

FBI I-Drive

Tigar said that the revelations about the I-drive are part of a pattern. "They are recidivists. They [have been] warned over and over and over again that their information technology, acquisition, management and disclosure [are] seriously flawed, and that they'd better do something."

The I-drive problem was revealed in an Associated Press wire story in March 2004. AP writer John Solomon wrote in a story published March 2 that "concerned FBI agents" brought the story to AP's attention. The FBI said it would ask its internal inspection division to determine how many documents are on I-drives in FBI offices across the country that did not make it into official case files.[9] If a large number of documents are found, Solomon wrote, a review would begin to determine whether any should have been turned over to defense lawyers or to bodies like the Sept. 11 Commission or Congress, according to officials.

"The only official records system the FBI has is our paper records," Robert J. Garrity Jr., then-deputy assistant director in charge of the Records Management Division told AP. Documents that do not get into the FBI's official case files or its automated computer case system would not be searched for materials that should be turned over to defense lawyers or Congress, Garrity acknowledged.

If ignorance is bliss, federal prosecutors and FBI headquarters until recently have been most blissfully unaware of this electronic black hole in which evidence that does not "fit" the FBI's theory of the case could be stored indefinitely. Since FBI supervisors in Washington claim to have been unaware of the FBI field office I-drives until contacted by AP, it is unlikely that federal prosecutors know of them either. Defense lawyers litigating criminal cases should henceforth make discovery requests under *Brady, Giglio* and *Kyles v. Whitley* in every case involving the FBI, requesting that the prosecutor order a review of the relevant field office's I-drive and any other temporary records storage drive for potential *Brady* material.

**Footnotes:**

1. *See, e.g.,* Associated Press, "Judge Frees Lawyer, Reprimands FBI," *Richmond Times-Dispatch*, June 3, 2001 at C5.

2. Letter from David M. Hardy, Acting Deputy Assistant Director, Records Management Division, Federal Bureau of Investigation to Jesse Trentadue [an attorney in Salt Lake City] dated June 8, 2004 (emphasis added).

3. National Public Radio, "All Things Considered," Sept. 6, 2004, "Defense lawyers voice concern over how the FBI handles information," (transcript) 2004 WL 57379940 (emphasis added). Broadcast audio, "Lawyers Raise Concern Over Hidden FBI 'I-Drives,'" archived at: http://www.npr.org/features/feature.php?wfld=3892787, last visited Sept. 7, 2004.

4. 373 U.S. 83 (1963).

5. *See* Note 2 *supra.*

6. Letter from William L. Hooton, Assistant Director, FBI Records Management Division, to Jesse Trentadue, dated March 25, 3004.

7. 514 U.S. 419 (1995).

8. *See* Note 3 *supra.*

9. John Solomon, "FBI Didn't Search 'I-Drive' Files," Associated Press, Mar. 2, 2004.

Exhibit C



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

*November 30, 2004*

MR MICHAEL L BROWN
**04909-090
POST OFFICE BOX 7000
FLORENCE, CO 81226

Request No.: 1009246- 000
Subject: BROWN, MICHAEL L

Dear Mr. Brown:

☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request. Your request was forwarded to FBI Headquarters from the Milwaukee and Oklahoma City Field Offices.

☐    For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☐    We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

Exhibit D



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MR MICHAEL L BROWN                                    December 7, 2004
**04909-090
POST OFFICE BOX 7000
FLORENCE, CO 81226

Request No.: 1009246- 000
Subject: BROWN, MICHAEL L

Dear Requester:

This is in reference to your Freedom of Information-Privacy Acts (FOIPA) request for information pertaining to the above subject.

The records you seek appear in investigative files that are exempt from disclosure pursuant to subsection (b)(7)(F) of Title 5, United States Code, Section 552. This exemption is used to withhold records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to endanger the life or physical safety of any individual.

You may appeal this denial by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D.C., 20530, within sixty days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may easily be identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section
Records Management Division

Enclosure

Exhibit E

**U.S. Department of Justice**

Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**MAR 0 8 2005**

Mr. Michael L. Brown
Register No. 04909-090
United States Penitentiary
P.O. Box 7000
Florence, CO 81226

      Re:  Request No. 1009246-000

Dear Mr. Brown:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation on your request for information from the files of the Department of Justice was received by this Office on February 24, 2005.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **05-1149**.  Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can.  The necessity of this delay is regretted and your continuing courtesy is appreciated.

                Sincerely,

                Priscilla Jones
                Chief, Administrative Staff

Exhibit F

To: U.S. Department of Justice

    Office Of Information and Privacy

    Washington, D.C. 20530

                                     6-13-06

Re: Request No. 1009246-000

    (FOIA) Appeal No. 05-1149


I am still patiently awaiting the responds to my Freedom Of Information FOIA appeal file my be to your office. In the last year I have filed an appeal with your office at least three times, and have yet to receive a responds. I hope to receive a responds soon I am to use this information in a up coming court filing back in the courts claiming Fifth and Sixth Amendment violation due t the fact I know this information exist and I know this is exculpatory evidence evidence that should have been presented to me before trial. I hope to hear from you soon.

Sincerely,

Michael L. Brown

United States Penitentiary Victorville

Reg. No.04909-090

P.O.Box 5500

Victorville, California 92301

Exhibit G

To: U.S. Department of Justice

   Office Of Information and Privacy

   Washington, D.C. 20530

                                   7-13-05

Re: Request No. 1009246-000

   (FOIA) Appeal No. 05-1149


I am writing to inform you of my recent transfer from United States Penitentiary Florence, Colorado, to United States Penitentiary Victorville, California.

   I am also writing to inform you that I am still awaiting your answer to my Freedom Of Information Act (FOIA) Appeal. The last responds was sent to me by your office on 3-8-05.

   I hope to receive a responds soon I am to use this information in a up coming court filing claiming Fifth and Sixth Amendment violation due t the fact I know this information exist and I know this is exculpatory evidence, evidence that should have been presented to the defense before trial. I hope to hear from you soon.

Sincerely,

Michael L. Brown

United States Penitentiary Victorville

Reg. No.04909-090

P.O.Box 5500

Victorville, California 92301

U.S. Department of Justice

Office of Information and Privacy

Washington, D.C. 20530

Re: Appeal No. O5-1149

5-15-07

     I am writing to inform you of my address change. I have since bee transferred from U.S.P. Victorville California to U.S.P. Tucson, Arizona. I am still awaiting your final decision to turn over the I-drive information I requested, along with all the other information I requested and any other information you may have in your files.

     I initially started my request for these files back in early 2005. The last time I've heard anything for your office was in December 2006. I request you make a final a decision to turn over this information, or not to turn over this information so I may do what next to correct this grave miscarriage of justice.

Sincerely,

Michael L. Brown

Reg. No. 04909-090

U.S.P. Tucson

P.O. Box 24550

Tucson, AZ 85734

Exhibit H



Office of Information and Privacy

_____

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**MAY 1 9 2008**


Mr. Michael L. Brown
Register No. 04909-090
United States Penitentiary          Re:    Appeal No. 05-1149
Post Office Box 24550                       Request No. 1009246
Tucson, AZ  85734                           ADW:CAS

Dear Mr. Brown:

     You appealed from the action of the Milwaukee and Oklahoma City Field Offices and the Headquarters Office of the Federal Bureau of Investigation on your request for access to records pertaining to yourself.  I regret the substantial delay in responding to your appeal.

     After carefully considering your appeal, I am affirming, on partly modified grounds, the FBI's action on your request.  The records responsive to your request are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  <u>See</u> 28 C.F.R. § 16.96 (2007).  Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act in order to afford you the greatest possible access to them.

     The FBI properly withheld this information in its entirety because it is protected from disclosure under the FOIA pursuant to:

     5 U.S.C. § 552(b)(2), which concerns matters that are related solely to internal agency practices;

     5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; and

     5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

-2-

If you are dissatisfied with my action on your appeal, you may file a lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

Exhibit I

# Freedom of Information Act fortified by Congress

THE ASSOCIATED PRESS

WASHINGTON — Congress on Tuesday struck back at the Bush administration's trend toward secrecy since the 2001 terrorist attacks, passing legislation to toughen the Freedom of Information Act and increasing penalties on agencies that don't comply.

The White House would not say whether President Bush will sign the legislation, which unanimously passed the House by voice vote Tuesday a few days after it sailed through the Senate. Without Bush's signature, the bill would become law during the congressional recess that begins next week.

It would be the first makeover of the FOIA in a decade, among other things bringing non-proprietary information held by government contractors under the law. The legislation also is aimed at reversing an order by former Attorney General John Ashcroft in the wake of the attacks, in which he instructed agencies to lean against releasing information when there was uncertainty about how doing so would affect national security.

## Media outlets support changes

The overwhelming congressional support for the legislation owes in part to administration allies who successfully insisted on stripping out language explicitly reversing Ashcroft's order.

That victory, said Rep. Tom Davis, R-Va., is evidence that "we'll continue to try to balance national security with the vital interests of open government."

With or without the Ashcroft provision, one of the sponsors said, the rewritten version that cleared Congress Tuesday will have the intended effect of reversal.

"No matter who is the next president, he will have to run a government that is more open than in the past," if the bill becomes law, Judiciary Committee Chairman Patrick Leahy, D-Vt., said on the Senate floor.

A previously passed version was rewritten this month to meet House concerns about how government agencies would pay for attorneys' fees when they lose or settle a FOIA lawsuit. That money will now have to come from other programs within each agency.

Supporting changes in the law were dozens of media outlets, including The Associated Press.

The bill restores a presumption of disclosure standard committing government agencies to releasing requested information unless there is a finding that such disclosure could do harm.

J

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prison                    **Administrative Detention Order**

USP FLORENCE (HIGH) CO

Date/Time:   02-11-05  2:07  PM

:Special Housing Unit Officer
FROM : M, FITZGERALD LIEUTENANT  (Name/Title)

SUBJECT: Placement of Brown      Reg. No.04909-090_in Administrative Detention

_____ (a)  Is pending a hearing for a violation of Bureau regulations:
_____ (b)  Is pending investigation of a violation of Bureau regulations:
_____ (c)  Is pending investigation or trial for a criminal act:
___X___ (d)  Is to be admitted to Administrative Detention

_____ (1) Since the inmate has requested admission for protection:

I hereby request placement in Administrative Detention for my own protection.
                    Inmate Signature/Register No.:_____
              Staff Witness Printed Name/Signature:_____
_____(2) Since a serious threat exists to individual's safety as perceived
by staff, although person has not requested admission: referral of the necessary
information will be forwarded to the UDC/DHO for appropriate hearing.

_____ (e)  Is pending transfer or is in holdover status during transfer:
_____ (f)  Is pending classification: or
_____ (g)  Is terminating confinement in Disciplinary Segregation and has been
ordered into Administrative Detention by the Warden's designee.

It is this officer's decision based on all the circumstances that the above named
inmate's continued presence in the general population poses a serious threat to
life, property, self, staff, other inmates, or the security or orderly running of
the institution.
Therefore, the above named inmate is to be placed in Administrative detention until
further notice.  The inmate received a copy of this Order on:
(date / time)_____
Staff Witness Signature/Printed Name B.Hand Lieutenant_____ Date 02-11-2005
    3:00PM
*In the case of DHO action, reference to that order is sufficient.  In other cases, the officer will make an
independent review and decision, which is documented here.

cc:   Inmate Concerned (not necessary if placement is a result of holdover status)
      Captain, Administrative Detention Lieutenant, Unit Manager and Central File.
      BP-308(52)  JANUARY 1988

**LIMITED OFFICIAL USE**

*SHU REVIEW*

```
Date........: Thursday, March 10, 2005
Inmate......: BROWN, MICHAEL
Reg. No.....: 04909-090

Author......: JOE ZONNO, PH.D.
Title.......: STAFF PSYCHOLOGIST
Institution.: FLP
```

Inmate BROWN was placed in the Special Housing Unit on 2/11/2005. In accord with Discipline and SHU policy, a psychological review was conducted.

At the time of this review, inmate BROWN was housed in the Special Housing Unit with a quarters assignment of ADMIN. DETENTION.

Inmate BROWN refused to be interviewed. The inmate was observed by the reviewing Psychologist. Staff members were consulted. Available records were reviewed where necessary and appropriate.

The findings of this review are:

MENTAL STATUS ..... : Current mental status, emotional expression, and behavior suggest significant mental health problems.

ADJUSTMENT ........ : Based on current information, current adjustment to the Special Housing Unit appears to be SATISFACTORY.

THREAT TO SELF..... : Precise prediction of self-injurious behavior is difficult and should be modified over time as individual circumstances change. Based on the inmate's history, exisiting conditions, and other information available at the time of the review, the current risk of self-harm is judged to be LOW.

THREAT TO OTHERS .. : Precise prediction of dangerousness is difficult and should be modified over time as individual circumstances change. Based on the inmate's history, exisiting conditions, and other information available at the time of the review, the current potential for harm to others is judged to be LOW.

COMMENTS :

Inmate did not request psychology services during SHU rounds and was not interviewed. Visual observation did not reveal any obvious distress. SHU Staff reports and records do not indicate adjustment/behavioral difficulties. Inmate will be scheduled for tele-psychiatry clinic re note dated 02-10-05. Continue to monitor during SHU rounds.

Exhibit K

**UNITED STATES OF AMERICA, Plaintiff, v. MICHAEL L. BROWN, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN**
**2006 U.S. Dist. LEXIS 83694**
**01-CR-0032-C-01**
**November 14, 2006, Entered**

**Editorial Information: Prior History**

United States v. Sutton, 337 F.3d 792, 2003 U.S. App. LEXIS 14663 (7th Cir. Wis., 2003)

**Counsel**      For USA, Plaintiff:STEPHEN SINNOTT, ASSISTANT U.S. ATTORNEY,
      MADISON, WI.

      For BROWN, MICHAEL L., Defendants: 'MICHAEL L. BROWN,
      USP VICTORVILLE, ADELANTO, CA.
**Judges:** Barbara B. Crabb, District Judge.

**Opinion**

**Opinion by:**      BARBARA B. CRABB

ORDER

Defendant Michael L. Brown has moved for a new trial pursuant to Fed. R. Crim. P. 33(b)(1) . He contends that he has a possibility of obtaining new evidence and that the deadline for finding a new trial on the basis of newly discovered evidence is approaching rapidly.

Defendant was convicted in this court on March 15, 2002 on nine counts of bank robbery and use of a firearm in connection with a crime of violence. He appealed from the judgment of conviction. After his appeal was denied, he filed for a writ of certiorari, which was denied on December 1, 2003. On November 11, 2004, he filed a timely motion for collateral relief pursuant to 28 U.S.C. § 2255 , which was denied on January 4, 2005.

Although defendant styles his present motion as one for a new trial, it falls within the category of motions for collateral relief unless it is "a genuine claim of newly discovered evidence tending to show innocence." *United States v. Evans,* 224 F.3d 670, 672 (7th Cir. 2000) . In this instance, it is difficult to tell whether defendant's motion comes within the "actual innocence" exception. Defendant does not describe any evidence that he has in his possession. Rather, he contends that the FBI has a practice of withholding exculpatory evidence on the ⬛⬛⬛⬛⬛ that the bureau maintains. Defendant says that he has requested copies of the documents on this drive but has been denied them and that he has appealed from the decision but is still waiting for the appeal to be heard.

Defendant asserts that the drive holds evidence that has not been "approved" by a supervisory agent so as to be included in a case file and he asserts that the evidence is exculpatory because it would show that other persons were the actual perpetrators and conspirators of the armed robbery scheme for which he was sentenced. This assertion is not supported by any information that would tend to support his claim that the allegedly withheld information is exculpatory.

Defendant's motion is premature. If and when he obtains evidence from the FBI culled from the I-drive or receives a final decision on his appeal from the bureau's refusal to release information to him, he may come back to court. If the bureau decides to release the evidence and it is exculpatory, as he believes, he may have a basis both for filing a motion for new trial and for relief from the 3-year filing

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

deadline set out in Rule 33 . If the final decision is to continue to withhold the information, defendant may file a Freedom of Information Act request and secure a determination of the validity of the bureau's decision not to release the information to him.

At the end of his motion, defendant alleges that the Bureau of Prisons has retaliated against him for seeking information from the FBI. If he believes that he has a valid case of unconstitutional retaliation, he may have a constitutional claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 399 U.S. 905, 91 S. Ct. 101, 27 L. Ed. 2d 102, 90 S. Ct. 2203, 26 L. Ed. 2d 559 (1970) , that he could pursue in the district in which he is confined.

Defendant has asked for the appointment of counsel to help him with the prosecution of this motion. That request will be denied as moot.

ORDER

IT IS ORDERED that defendant Michael L. Brown's motion for a new trial pursuant to Rule 33(b)(1) is DENIED as premature. His request for the appointment of counsel is DENIED as moot.

Entered this 14th day of November, 2006.

BY THE COURT:

BARBARA B. CRABB

District Judge

© 2007 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.