# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **MICHAEL L. BROWN,** | ) |  |
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) |  |
| **v.** | ) | **Civil Action No. 08-0821 (ESH)** |
|  | ) |  |
| **U.S. DEPARTMENT OF JUSTICE, et al.,** | ) |  |
|  | ) |  |
| **Defendants.** | ) |  |

_____ )

## MEMORANDUM OPINION

Plaintiff Michael Brown has sued the Federal Bureau of Investigation ("FBI"), the Office of Information and Privacy ("OIP"), and federal employees David Hardy and Priscilla Jones under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff is an inmate at the United States Prison in Tucson, Arizona, and is proceeding *pro se*. He seeks a *Vaughn* index for documents withheld pursuant to his request for all records referencing himself and other third parties maintained by the FBI, as well as additional documents and records. Having produced documents and a *Vaughn* index, the FBI now moves to dismiss plaintiff's claims or, in the alternative, for summary judgment. Upon consideration of the parties' submissions and the entire record, the Court will grant the FBI's motion to dismiss plaintiff's claims against defendants OIP, Hardy, and Jones. The Court will also grant the FBI's motion for summary judgment.

## BACKGROUND

In November 2004, plaintiff sent letters to the FBI's Milwaukee and Oklahoma Field Offices, requesting access to all records pertaining to himself and third-party individuals,

including government witnesses in the criminal case against him. (Third Decl. of David M. Hardy ["Hardy Decl."] ¶ 7.) Plaintiff's request did not include privacy waivers and/or proof of death regarding the third parties about whom he sought records. (*Id.*) One month later, the FBI denied all of plaintiff's requests pursuant to 5 U.S.C. § 552(b)(7)(F), which decision plaintiff subsequently appealed in February 2005. (Hardy Decl., Exs. C, D.) Having not yet received a response from defendant over three years later, plaintiff filed his complaint on May 13, 2008.[1] Six days later, OIP responded to plaintiff's appeal, affirming the FBI's decision to withhold the requested documents, but based on different FOIA Exemptions: § 552(b)(2), (b)(7)(C), and (b)(7)(E). (*Id.*, Ex. F.) However, because of his lawsuit, plaintiff's requests were reopened and new searches were conducted. (*Id.* ¶ 14.) As a result, the FBI identified approximately 1,668 additional pages of material responsive to plaintiff's request to the Milwaukee Field Office, but no additional pages responsive to plaintiff's request to the Oklahoma Field Office. (*Id.* ¶¶ 15-16.)

In two letters dated July 7, 2008, the FBI informed plaintiff that it located no additional responsive materials in the Oklahoma Field Office and that because plaintiff had failed to provide privacy waivers or proof of death, it was unable to process the third party portion of plaintiff's request. (*Id.*, Exs. H, I.) On September 29, 2008, the FBI sent plaintiff an "interim" release of 301 pages, with redactions, from the Milwaukee Field Office files. (*Id.* ¶ 18.) In

---

[1] Plaintiff's original complaint sought an order from the Court to the government to "turn over all information" regarding plaintiff in response to his 2004 requests. (Compl. at 1.) It also asked for a "detailed justification" concerning materials the government had stated it would withhold from plaintiff, "including an itemization and index of documents claimed to be exempt, correlating specific statements in such justification with actual portions of the requested documents." (*Id.*) Subsequently, the Court granted several motions by Mr. Brown to supplement his complaint to include requests for other specific documents and searches, including a search on the FBI's "I-Drive System Files" and other records, systems, and indices. (Minute Order, July 23, 2008.)

August, after a delay in receiving plaintiff's payment for copying fees associated with his request, the FBI released an additional 619 redacted pages. (*Id.* ¶¶ 24, 26.) In October 2009, the Court set a schedule for briefing of defendants' dispositive motion and ordered the government to include a *Vaughn* index. (Minute Order, Oct. 22, 2009.) Adopting defendants' proposed sampling methodology for the *Vaughn* index, the Court ordered them to include a sample set of ten percent of the 1,754 documents that were responsive to plaintiff's request in the index.[2]

On February 4, 2010, defendants filed a motion to dismiss or alternatively, a motion for summary judgment. Defendants seek to dismiss Mr. Brown's claims against defendants OIP, Hardy, and Jones, and they seek summary judgment regarding the claims against the FBI. Attached to defendants' motion is a declaration from David M. Hardy, the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"). The declaration contains an explanation of the document search and review, as well as the processing of the 175-page sample of responsive documents in accordance with *Vaughn v. Rosen*, 481 F.2d 820 (D.C. Cir. 1973). The 175 pages summarized in the *Vaughn* index are bates-stamped and attached thereto. (Hardy Decl. at 14, Ex. R.)

---

[2] Under the procedure proposed by defendants and adopted by the Court, defendants used periodic sampling to pull every tenth page from the 1,754 pages of responsive documents identified by the FBI, for a total of 175 pages, and then they included the pulled pages in the *Vaughn* index. (Def.'s Resp. to Court's Order for Clarification.) Where defendants pulled a page that had already been produced to plaintiff in its entirety, it selected the next usable page including withheld or redacted information for inclusion on the index. (Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss or Alternatively, Mot. for Summ. J. ["Defs.' Mem."] at 16.)

# ANALYSIS

## I.  MOTION TO DISMISS

Defendants have moved to dismiss the complaint against the OIP, Hardy, and Jones for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Defs.' Mem. at 2.)  Specifically, defendants contend that OIP, Hardy, and Jones are improper parties to this FOIA action because the only proper party in a FOIA case is a federal agency, and these defendants (two individuals and an office within the United States Department of Justice) are not agencies.  (*Id.* at 1, 5.)  Mr. Brown concedes that "OIP is an improper party to this action," (Pl.'s Reply to Gov't's Opp./Reply ["Pl.'s Surreply"] at 10), and he does not respond to defendants' argument that Hardy and Jones are not appropriate parties to this action. Accordingly, because "[i]ndividual federal officials are not proper defendants in a FOIA action," *Jefferson v. Reno*, 123 F. Supp. 2d 1, 3 (D.D.C. 2000), the Court will grant defendants' motion to dismiss plaintiff's claims against OIP, Hardy, and Jones.

## II.  MOTION FOR SUMMARY JUDGMENT

The FBI contends that it conducted a reasonable search for records responsive to plaintiff's requests and that, having now turned over all reasonably segregable, non-exempt responsive materials to plaintiff, it is entitled to summary judgment.  (Defs.' Mem. at 6.)  Mr. Brown opposes the FBI's motion on a number of grounds: 1) the failure of the FBI to number or otherwise index the 920 pages it released to plaintiff; 2) an inadequate number of entries in the *Vaughn* index provided by the FBI; 3) the failure of the *Vaughn* index to comply with the content description requirements of *Mead Data Central, Inc. v. U.S. Department of the Air Force*, 566 F.2d 243 (D.C. Cir. 1977); 4) the failure of the FBI to provide requested "pointer indices printouts" (*i.e.*, indices of various records systems); 5) the generality of Mr. Hardy's declaration;

6) the prematurity of summary judgment in the absence of additional records to be released; 7) the insufficiency of the FBI's segregability analysis; and 8) a variety of other alleged search inadequacies, including the failure of the FBI to search or process cross-references; name all records systems and indices; or provide "FD-160 search slips," screen printouts of search slips, or office of origin files. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. ["Opp'n"] at 4-11.). The Court addresses plaintiff's arguments in turn.

## A. Standard of Review

"FOIA cases appropriately may be decided on motions for summary judgment." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007). Summary judgment should be granted to the movant if it has shown, when the facts are viewed in the light most favorable to the nonmovant, that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

To prevail in a FOIA action, an agency "must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). There is "no requirement that an agency search every record system," but "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (citing *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). Moreover, the agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Id.*

"To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine*, 71 F.3d at 890. "The affidavits must be 'reasonably detailed . . . , setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* (quoting *Oglesby*, 920 F.2d at 68. "Conclusory statements that the agency has reviewed relevant files are insufficient to support summary judgment." *Id.* (citing *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 370 (D.C. Cir. 1980)).

### B.  Failure to Number or Index Responsive Documents Released to Plaintiff

Plaintiff alleges that only 47 of the 920 responsive documents released wholly or in part to him are bates-stamped and that the failure of the FBI to number the documents means that he cannot verify the FBI's sampling procedure.[3]  (Opp'n at 5.)  He also contends the defendant failed to provide a *Vaughn* index for every tenth page, but rather provided entries summarizing other pages, such as page 21 instead of page 20, thereby rendering defendants' sample insufficient to satisfy the strictures of *Vaughn*.  (*Id.*)

There is no requirement in 5 U.S.C. § 552 that documents released by an agency in response to a FOIA request be bates-stamped or otherwise numbered.  Section 552(a)(3)(A) merely requires that an agency, upon receipt of "any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules," must "make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Although the statute notes

---

[3] It appears that the FBI bates-stamped the 1,754 documents responsive to plaintiff's request only after those documents not withheld in their entirety were produced to plaintiff. (Hardy Decl. ¶ 5 (pursuant to Court Order dated October 22, 2009, several months after 920 pages were released to plaintiff, "each of the 1,754 [responsive] pages was numbered consecutively using the Bates-stamp method").)

the obligation of the agency to make the records available in any "readily reproducible" format requested (*e.g.*, electronic, etc.), *id.* § 552(a)(3)(B), it is silent as to the addition of numbering or other identifying labels.  Nor does plaintiff cite any caselaw to support of his argument that such numbering is required.  On the contrary, other cases in this jurisdiction suggest that a failure to number documents released to a plaintiff in a FOIA case does not render the defendant's production inadequate.  *See Judicial Watch Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19 (D.D.C. 2000) (defendant did not Bates stamp certain withheld documents summarized in *Vaughn* index); *Alexander & Alexander Servs., Inc. v. SEC*, 92-cv-1112, 1993 WL 439799, at *6 n.5 (D.D.C. Oct. 19, 1993) (in reverse FOIA case, agency "was under no obligation to segregate the documents into categories or otherwise organize the documents for review").

Plaintiff maintains that the failure of the FBI to bates-number the released and withheld sets of documents means that the sampling procedure used by the FBI cannot be verified, leaving defendant able to "select the documents of its choice" for inclusion in the *Vaughn* index.  (Opp'n at 5.)  As such, he requests the Court to "order Defendant to Bates number the 1754 pages, indicate the 920 pages released, and conduct the sampling method appropriately for the Court's review."  (*Id.*)  However, in his declaration, Hardy affirms that, pursuant to the Court's order, the FBI "used periodic sampling, selecting every 10th page from the 1,754 pages for a total of 175 pages."  (Hardy Decl. ¶ 5.)  In response, plaintiff offers nothing but sheer speculation that the FBI failed to comply with the Court's October 22, 2009 Order and that the sample of documents summarized in the *Vaughn* index was not randomly selected.  Such speculation is inadequate to overcome the presumption of good faith accorded to Hardy's declaration.  *Ferranti v. Bureau of Alcohol, Tobacco, & Firearms*, 177 F. Supp. 2d 41, 46 (D.D.C. 2001) ("The Court finds no indication of bad faith on the part of the defendant in this case, and therefore finds no reason to

conclude that plaintiff's speculation . . . should over come the presumption of good faith accorded to [defendant's representative's] sworn declaration."); *see also Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) ("Agency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents."). The Court is satisfied that the FBI's sampling process was appropriate.[4]

Plaintiff's argument that the FBI's sampling method is inaccurate because defendant "actually did not provide every tenth page," but provided, for example, page 21 instead of page 20, appears to be a misunderstanding of the procedure adopted by defendant. As discussed in defendant's motion, the FBI bates-stamped all 1,754 pages of responsive documents, then pulled every tenth page. (Defs.' Mem. at 16.) However, when the FBI pulled a page that had already been released in full to plaintiff (and, as such, did not include redactions to be summarized in a *Vaughn* index), it pulled the nearest subsequent page that did include such redactions. (*Id.*) As such, page 21 was summarized instead of page 20, and so forth. Such a methodology is not only consistent with the procedure approved by the Court on October 22, 2009, it could have been required by the Court had the FBI not performed it voluntarily. *See Weisberg*, 745 F.2d at 1490 (where randomized sampling approach "resulted in an index with a sampling of large pages with no excisions or deletions whatever, the District Court required a second *Vaughn* index consisting

---

[4] The Court notes that plaintiff's proposal that defendant bates-stamp the 1,754 responsive pages and redo the sampling would not alleviate plaintiff's concern that the *Vaughn* index sample was not randomly selected. Defendant could simply arrange the documents such that every tenth page is a document it desires to summarize, effectively selecting documents of its choice for the index. As such, even if defendant were forced to number and identify produced documents, the Court would continue to rely on defendant's good faith in producing a sample consistent with the methodology it approved.

only of documents containing deletions"). Therefore, plaintiff's objection to the FBI's sampling methodology is unpersuasive.

### C.  **Number of Entries in the *Vaughn* Index**

Plaintiff next argues that the *Vaughn* index provided by the FBI does not comply with the Court's October 22, 2009 Order because it contains only eight, as opposed to 175, entries. (Opp'n at 5-6.)  Plaintiff cites to Exhibit S of defendants' motion, which concerns documents responsive to plaintiff's request that originated from the Executive Office for United States Attorneys ("EOUSA") at the United States Department of Justice.[5]  This exhibit includes a *Vaughn* index for eight responsive documents that were withheld or redacted by the EOUSA; the index explains the reasons for the EOUSA's withholdings.  (Defs.' Mem., Ex. S, Ex. 8.)

Plaintiff correctly notes that the EOUSA's table does not include descriptions of the 175-page sample set pulled by the FBI as required by the Court.  However, the EOUSA table is only one portion of the *Vaughn* index provided by defendants in this case.  The rest of the index is included in Hardy's declaration, which includes an explanation of all of the redactions in the 175-page sample set.  (Hardy Decl. ¶¶ 42-94 (describing Privacy Act and FOIA exemptions asserted by the FBI as well as the pages on which such exemptions were claimed).)  Hardy's declaration notes the basis for each redaction and withheld page, referring to the bates-numbered sample documents attached as Exhibit R.  (*E.g., id.* at 17 n.4.)  Although the narrative format of

---

[5] In conducting its search for documents responsive to plaintiff's request, the FBI located 94 pages originating with the EOUSA.  (Defs.' Mem. at 2.)  The FBI referred 49 of these documents to the EOUSA for that office's direct response to plaintiff, and it inadvertently processed 45 pages before referring those pages to the EOUSA, as well.  (*Id.* at 2-3.)  In response, Dione Jackson Stearns, an attorney advisor with the EOUSA, prepared a declaration, discussing the EOUSA's disclosure determinations as to those documents.  (Defs.' Mem., Ex. S, at 5.)  Attached to that exhibit is a table summarizing the EOUSA's proprietary interest in eight of the 94 responsive documents that originated with that office and that were withheld and/or redacted.  (*Id.*, Ex. S, Ex. 8.)  The table includes a description of the documents and explanations for the withholdings.  (*Id.*)

the FBI's *Vaughn* index differs from the table created by the EOUSA, "it is the function, not the form, of the index that is important." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987). The D.C. Circuit has identified three key elements in an adequate *Vaughn* index:

> (1) [t]he index should be contained in one document, complete in itself, (2) [t]he index must adequately describe each withheld document or deletion from a released document, (3) [t]he index must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant.

*Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). So long as the *Vaughn* index includes these elements, it does not matter whether the index is presented as a table with entries like the one produced by the EOUSA. *See Keys*, 830 F.2d at 349 (upholding adequacy of *Vaughn* index that incorporated coded deletions into a declaration with generalized descriptions of exemptions and correlated each deletion with an exemption, rather than a "classical *Vaughn* index" with individualized exemption explanations).

Hardy's declaration describes in one document each deletion and withheld document, states the applicable exemption, and explains the basis for the exemption. (*E.g.*, Hardy Decl. ¶ 48 (summarizing and explaining the reasons for information redacted in 10 pages of the sample set).) As such, the Court finds that the declaration meets the requirements of a *Vaughn* index.

**D.  Content Description Requirements of *Mead Data Central***

Plaintiff argues next that the FBI's "one-line descriptions" of the content of the information it withheld are insufficient to meet the requirements set forth by the D.C. Circuit in *Vaughn* and *Mead Data Central, Inc. v. Department of the Air Force*. (Opp'n at 6.) *Mead Data Central* involved a FOIA request to the Air Force, which initially responded with a "very brief description of each document" that had been withheld (*e.g.*, "legal opinions," "memoranda," "a letter"), but then provided more elaborate descriptions in affidavits prepared by Air Force

officials. 566 F.2d at 248-49 n.3. The district court found that "although the Air Force's initial description of the withheld documents hardly comported with the requirements of *Vaughn v. Rosen* . . . [,] the elaborated description contained in the affidavits [defendant] had submitted to the court was adequate." *Id.* at 250.[6]

Plaintiff urges the Court to compare the FBI's descriptions of information it has withheld to the one-word descriptions discussed in *Mead Data Central*, arguing that defendant's "one-line descriptions are even more limited than those in the initial *Vaughn* Index in *Mead*." (Opp'n at 6.) The Court disagrees. As an initial matter, although the information descriptions in the EOUSA's *Vaughn* index, which summarize the eight withheld documents, may fairly be characterized as "one-line" (*see* Hardy Decl., Ex. S, Ex. 8 (describing one document as a "one-page unsigned and undated draft of a plea agreement pertaining to a third party defendant")), these descriptions are substantially more detailed than the one-word descriptors initially used in *Mead*. 566 F.2d at 249 n.3. Moreover, the EOUSA table descriptions apply to only eight out of 175 sampled documents. The content of the rest of the information withheld is summarized in Hardy's declaration, which goes far beyond "one-line" descriptions. Indeed, Hardy's explanations include numerous details as to the precise nature of the redacted or withheld information, certainly enough to "'give [the C]ourt a reasonable basis to evaluate the claim of privilege.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting *Gallant v.*

---

[6] The district court ultimately found that the government had sufficiently demonstrated that the withheld documents were exempt from disclosure as intra-agency memoranda and matters of attorney-client privilege, but the Circuit Court remanded the case after it found that the district court's interpretation of these exemptions was impermissibly broad. 566 F.2d at 262-63. The Circuit Court's remand did not turn on the district court's finding that the descriptions of withheld information were adequate under *Vaughn*.

*NLRB,* 26 F.3d 168, 172-73 (D.C. Cir. 1994)).[7]   As such, the Court finds the descriptions included in the FBI's index sufficient to meet the requirements of *Vaughn* and subsequent cases. *See id.* ("As past cases demonstrate, we focus on the functions of the *Vaughn* index, not the length of the document descriptions, as the touchstone of our analysis.").

### E.   Pointer Indices Printouts

Plaintiff contends that as part of his FOIA request to the FBI, he specifically asked for printouts of the "indices of the records systems (ACS, ELSUR, UNI, I-drive)." (Opp'n at 7; *see also* Hardy Decl., Ex. K ("[T]his request includes not only the associated records to which the CRS index and other indices point, but also the Index and indices themselves in complete form, *i.e.*, all the possible index or indices queries and results that act as a pointer index to the complete records.").) However, he claims that the FBI did not produce such indices, but rather provided him only with the documents to which the indices referred. (*Id.*) Plaintiff cites no case law suggesting that he is entitled to such indices or that such printouts are responsive to his request for documents referencing him and other third parties, but he maintains that the indices "provide this Court with a new method of confirming that all relevant records have been provided." (*Id.*)

As detailed in Hardy's declaration, the FBI conducted a search of its Central Records System ("CRS") using the Automated Case Support System ("ACS") and the General Indices for all records concerning Michael Lynn Brown, a phonetic breakdown of his name, and his date of birth. (Hardy Decl. ¶¶ 27-29, 38.) That search included use of the Universal Index ("UNI") application, which is an automated application of ACS that "functions to index names to cases,

---

[7] For example, Hardy describes information redacted from ten responsive documents pursuant to FOIA Exemption (b)(2) as "rating columns" withheld from FBI Form FD-515 "which record[] a numerical rating from 1-4 to rate each technique/assistance used by investigative personnel during the course of the investigation [on] the effectiveness of each technique/assistance used in bringing the investigation to a successful conclusion." (Hardy Decl. ¶ 48.)

and to search names and cases for use in FBI investigations." (*Id.* ¶ 31.) The FBI also conducted

a search of the Electronic Surveillance ("ELSUR") indices, used to maintain information on

subjects whose communications have been intercepted as the result of electronic surveillance,

which are kept separately from the General Index and the CRS. (*Id.* ¶¶ 33-35, 39.) This search,

as well as a search of the "I-drive," uncovered no responsive documents. (*Id.* ¶ 39.)

The Court concludes that the FBI's search of documents concerning plaintiff was

conducted "using methods which [could be] reasonably expected to produce the information

requested" and therefore was adequate to meet the requirements of FOIA. *Nation Magazine*, 71

F.3d at 890. Printouts of the various indices referred to by plaintiff, if even possible,[8] are neither

responsive to plaintiff's request for documents concerning himself, nor are they likely to lead the

Court to identify responsive documents that have not been produced. As stated by Hardy, the

FBI searched each of the referenced indices, and it produced or withheld pursuant to FOIA or

Privacy Act exemptions all responsive documents it located. To the extent that a "printout" of

the indices contains any references to plaintiff, such references would have been located in the

FBI's search of documents concerning him, because all of those indices were searched. And,

even if such printouts could possibly identify additional responsive documents, the issue before

---

[8] Plaintiff contends that printouts of the pointer indices "are accessed and provided easily, so that their production is hardly burdensome to Defendant," (Opp'n at 7), yet he provides no support for this assertion. Moreover, the Court is doubtful that the printouts plaintiff requests can be created easily, if at all. For example, plaintiff asked for a printout of the ACS "index," but the ACS is an "internal computerized subsystem" of the CRS consisting of applications used to "support case management functions for all FBI investigative and administrative cases." (Hardy Decl. ¶¶ 28-31.) As such, the ACS is not an index at all, but a system that allows the agency to access information. The UNI, by contrast, is a "complete subject/case index to all investigative and administrative cases,"—but it is an index of 109.1 million records linking names to cases. (*Id.* ¶ 31(c).) There is no evidence to suggest that it would be possible, or reasonable, for the FBI to create a printout of such a massive volume of information. Nor it is likely that such extensive documentation would be useful to the Court in its review of the FBI's search.

the Court "is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg*, 745 F.2d at 1485; *see also National Magazine*, 71 F.3d at 892 n.7 (failure to turn up responsive documents does not render a search inadequate, because "there is no requirement that an agency produce *all* responsive documents").

The Court is therefore satisfied that the FBI searched all locations where information pertaining to plaintiff might be located, and further searched other locations pursuant to plaintiff's specific requests. The FBI's failure to provide plaintiff with pointer indices printouts does not render its search inadequate.

## F. Adequacy of Hardy's Declaration

Next, plaintiff argues that the adequacy of the FBI's search for documents "cannot be assessed with confidence due to Hardy's generalized explanation of FBI's record systems." (Opp'n at 8.) Plaintiff cites *Rosenfeld v. U.S. Dep't of Justice*, No. C 07-3240, 2008 WL 3925633 (N.D. Cal. Aug. 22, 2008), another FOIA case against the FBI, in which the district court found a declaration by Hardy to be insufficient to satisfy the government's burden in moving for summary judgment. Specifically, the court held that the "general nature" of Hardy's description "combined with the lack of explanation about other electronic databases beyond the CRS necessitates a more detailed declaration." *Id.* at *14. It ordered the FBI to explain the nature and scope of the databases and indices it maintains, which databases it searched in response to plaintiff's requests in that case, what terms were searched, when the search was performed, where the search was performed, and which databases and indices were not searched. *Id.* It then criticized the FBI for failing to explain the nature of the ELSUR database and whether

it was searched. *Id.* Plaintiff argues that Hardy's declaration here, as in *Rosenfeld*, is inadequate for purposes of summary judgment.

The Court finds the *Rosenfeld* case to be inapposite, since Hardy's declaration in this case includes nearly all of the information the court in *Rosenfeld* found to be lacking. Hardy's declaration explains the databases searched, the terms used, where the search was conducted, etc. (Hardy Decl. ¶¶ 1, 29-37, 38-39.) It also explains the nature of ELSUR (*id.* ¶¶ 33-37) and notes that that database, among others, was searched pursuant to plaintiff's request. (*Id.* ¶ 39.) Moreover, the *Rosenfeld* case involved a journalist's request for documents concerning nine individuals and organizations, including former president Ronald Reagan and the Motion Picture Industry Council. 2008 WL 3925633, at *1. Much of the court's concern in *Rosenfeld* arose from the fact that the FBI failed to use all of the search terms the plaintiff had requested and failed to explain how databases other than the CRS were organized and why some were not searched. *Id.* at *13-*14. Here, plaintiff has requested documents concerning a much narrower topic (*i.e.*, plaintiff), and defendant searched for those documents in the CRS, which is where it keeps all of the records "acquired in the course of fulfilling [the FBI's] mandated law enforcement responsibilities." (*Id.* ¶ 27.) There is no suggestion that defendant failed to run searches requested by plaintiff; indeed, Hardy's declaration clearly notes that it ran searches of ELSUR and the I-drive pursuant to plaintiff's requests. (*Id.* ¶ 39.) Nor is this a case where defendant's declaration is "so general as to raise a serious doubt whether [it] conducted a reasonably thorough search of its records." *Cf. Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (court found declaration stating merely that defendant had "contacted [another office] and was informed that no records responsive to the request had been located" was insufficient).

In short, the Court concludes that Hardy's declaration sufficiently describes the files that the FBI RIDS personnel searched and sets forth the systematic approach defendant used to process plaintiff's request. Moreover, in contrast to *Rosenfeld*, there is nothing to suggest that the FBI disregarded plaintiff's search requests or otherwise failed to search locations where documents concerning plaintiff might be located. The Court therefore finds that Hardy's declaration is sufficient to support summary judgment. *See Weisberg*, 627 F.2d at 371.

### G. Additional Records to Be Released

Plaintiff also contends that summary judgment is premature because the FBI has only released 920 of the 1,754 documents it located in response to plaintiff's request. (Opp'n at 10.) Plaintiff argues that as a result of these withheld records, summary judgment is improper at this time because defendant did not apply the correct sampling method or sufficiently describe the content of withheld information. (*Id.*)

The Court has concluded that defendant's *Vaughn* index sufficiently described the content of withheld or redacted responsive information. And the fact that the FBI has not released 834 pages of responsive documents that it has determined fall under various FOIA and Privacy Act exemptions does not render summary judgment premature. These records are not "to be released," as plaintiff states, but rather are being withheld in their entirety. (*See* Hardy Decl. ¶ 4 (noting that while it had released 920 pages to plaintiff, "the remainder of the 1,754 pages (834) [are] being withheld in full.") In a FOIA suit, a defendant is entitled to summary judgment if it demonstrates that "'each document that falls within the class requested either has been produced . . . or is *wholly exempt* from the Act's inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (emphasis added)). As such, because the FBI avers that it

has released all reasonably segregable information to plaintiff (Hardy Decl. ¶ 95), summary judgment is not premature simply because defendant has withheld 834 documents in their entirety.

**H. Segregability Analysis**

Plaintiff also challenges the segregability analysis described in Hardy's declaration. Plaintiff contends that Hardy's "simple, boilerplate segregability analysis" that fails to separate out plaintiff's name, cities, and file numbers (information already known to plaintiff) from withheld documents suggests that defendant did not make a sufficient effort to release all information to which plaintiff is entitled.  (Opp'n at 11); *see also* 5 U.S.C. § 552 (requiring agencies to release "[a]ny reasonably segregable portion" of responsive records "after deletion of the portions which are exempt under [FOIA]").

The "segregability requirement applies to all documents and all exemptions in the FOIA," *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984), and to meet that requirement, agency declarations must show why any withheld documents cannot be further segregated "with reasonable specificity."  *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).  Hardy's declaration states that "[a]fter extensive review of the documents at issue, I have determined that there is no further reasonably segregable information to be released."  (Hardy Decl. ¶ 95.)  Throughout his declaration, Hardy provides an index of withheld information, categorizing each type of deletion and explaining why such deletions were necessary.  (*E.g., id.* ¶ 49 (describing redaction of "confidential source symbol numbers" withheld pursuant to 5 U.S.C. § 552(b)(2)-2 on six pages in sample set).)  Exhibit R to Hardy's declaration includes the pages and portions of pages withheld from plaintiff, including redacted documents as well as slip sheets for documents withheld in their entirety.  (*E.g.*, Hardy Decl., Ex.

R at 16.)   The redacted documents often contain multiple redactions on one page, covering a word or a phrase within a larger sentence or paragraph.  (*E.g.*, *id.* at 3 (covering identifying numbers but other information on same line), 4 (redacting words within sentences).)  The slip sheets for documents withheld in their entirety indicate the exemptions pursuant to which deletions were made and further state that such deletions left "no further segreable material available for release to you."  (*Id.* at 16; *see also, e.g.*, *id.* at 42 (noting that page was withheld because it is a "sealed court document pertaining to a third party").)

Based on its review of the 175-page sample set pulled for creation of the FBI's *Vaughn* index, the Court concludes that defendant's segregability analysis is sufficiently detailed.  *See*, *e.g.*, *Manchester v. FBI*, No. 96-0137, 2005 WL 3275802, at *4 (D.D.C. Aug. 9, 2005) (upholding segregability analysis in which FBI categorized and justified withheld information, "attached all of the partially redacted pages . . . with coded marks next to the deleted material corresponding to the index categories," and included "deleted page sheet[s]" for pages withheld in their entirety).  Plaintiff's argument that the FBI should have released plaintiff's name, cities, and file numbers on documents that are otherwise exempt from production is unavailing; defendant need not expend substantial time and resources to "yield a product with little, if any, informational value."  *Assassination Archives & Research Ctr. v. CIA*, 177 F. Supp. 2d 1, 9 (D.D.C. 2001); *see also Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (defendant need not release non-exempt information intertwined with exempt information where release "would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words").  Indeed, Brown's name and other identifying information was released on multiple redacted pages, indicating that the FBI did release that information where feasible and meaningful.  (*See, e.g.*, Hardy Decl., Ex. R, at 6, 7, 9, 34, 40.)

As there is no indication that the FBI has acted in bad faith in segregating and releasing non-exempt information in the nearly 1,000 pages released to plaintiff, the Court finds no reason to disregard Hardy's statement that all reasonably segregable non-exempt material has been released.

## I.  Additional Challenges

Plaintiff's remaining challenges concern a host of issues:

> 1) [c]ross-references requested by Plaintiff were not searched or processed in the manner requested; 2) Defendant failed to name all records systems and indices, or to explain its failure to search particular indices; 3) Defendant failed to provide the FD-160 search slips generated in any search at FBIHQ; 4) [t]he screen display printouts from which the FD-160 search slips are generated also were not produced; 5) Defendant failed to produce abstracts of the records that are retained in the [CRS] indices; 6) [r]ecords were identified but not released, viz. all "reference" records pertaining to Plaintiff as requested; 7) Defendant failed to re-process Brown's records as the Court instructed, as described herein; and 8) Defendant failed to produce "office of origin" (OO) files, e.g., records including but not limited to the Madison, Wisconsin, Chicago, Minneapolis and Oklahoma City field offices records in the FBIHQ version of the FBI's Field Office Management Information System (FOMIS).

(Opp'n at 10-11.)  These arguments, some of which repeat issues addressed above, fail to persuade the Court that the FBI's search and document production were inadequate under FOIA and related case law.

Hardy's declaration clearly states that although the "FBI's current policy is to search for and identify only 'main' files" responsive to FOIA requests, here the FBI "conducted a second search of the CRS to locate cross-references responsive to plaintiff's request," uncovering five cross-references.  (Hardy Decl. ¶ 39.)  There is no indication that the FBI failed to search any particular indices that might reasonably have contained material concerning plaintiff.  Plaintiff's requests for search slips, screen printouts, and abstracts—materials that do not already exist but

that would need to be created by the FBI—are "inconsistent with Supreme Court precedent holding that the FOIA 'does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created or retained.'" *Schoenman v. FBI*, No. 04-2202, 2009 WL 763065, at *18 (D.D.C. Mar. 19, 2009) (quoting *Schoenman v. FBI,* 573 F. Supp. 2d 119, 140 (D.D.C. 2008)). "In asking the [FBI] to provide him with documentation that may or may not exist but which, in any event, was created during the course of searching for records responsive to [p]laintiff's FOIA/PA Request, [p]laintiff essentially seeks to have the [FBI] create or retain such documents. The Court again declines to condone such a request." *Id.*

The Court is unaware of what records plaintiff is referring to in his opposition that "were identified but not released," such as "reference" records. (Opp'n at 11.) However, Hardy's declaration states that a search of the CRS was done to locate cross-references (a term used to describe "reference entries") responsive to plaintiff's request. (Hardy Decl. ¶¶ 29, 39.) As discussed above, the Court has concluded that the FBI processed plaintiff's records in accordance with the Court's October 22, 2009 Order, and there is no indication that defendant failed to follow the Court's instructions. Finally, plaintiff provides no support for his assertion that the FBI failed to produce files contained in the FBIHQ information management system that were responsive to his requests, regardless of originating field office. Plaintiff's speculation that there exist "office of origin" files responsive to his request that were not produced is insufficient to challenge Hardy's declaration that the CRS and ELSUR were searched and all responsive, non-exempt records were released to plaintiff. (Hardy Decl. ¶¶ 38-39.)

## CONCLUSION

For the reasons stated above, the Court will grant defendants' motion to dismiss and motion for summary judgment.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  August 30, 2010